IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVE W. MITCHELL, and ROBIN L.          :
MITCHELL, as Parents and Natural         :
Guardian of Bria Hasenauer, a/k/a Bria   :
Mitchell, a minor and Storm Hasenauer,   :
a/k/a Storm Mitchell, a minor            :
                        Plaintiffs   :
      v.                                :      3:CV-04-2240
                                   :      (JUDGE VANASKIE)
WILLIAM J. LUCKENBILL, JR., DAVID         :
GUENTHER, JOHN DOE, Commissioner         :
of the Pennsylvania State Police         :
                    Defendants   :

MEMORANDUM

      This case arises out of a hit-and-run accident that was reported to Pennsylvania State

Police Troopers William J. Luckenbill, Jr. and David Guenther in the early morning hours of

October 13, 2002.  After the troopers obtained a plate number and description of the vehicle and

driver who allegedly left the scene, the troopers identified Steve Mitchell as the owner of the

vehicle and went to the Mitchell residence to question him about the incident.  The parties

largely dispute the facts that follow.  It is, however, undisputed that Steve Mitchell was forcefully

arrested that night.  Plaintiffs, Steve Mitchell, his wife Robin Mitchell, and their children Storm

and Bria Hasenauer, brought the current action against Troopers Luckenbill and Guenther,

alleging that numerous state and constitutional rights were violated as a result of the incident.

Defendants have moved for partial summary judgment.  (Dkts. 82 & 83.)[1]

Defendants' summary judgment motions will be granted in part.  Plaintiffs admit that their claims against the troopers in their official capacity are barred and their claims pursuant to the Fifth, Sixth, and Eighth Amendments are without merit.  After review of the facts in a light most favorable to Plaintiffs it is further evident that Plaintiffs' state law claims are barred by sovereign immunity.  Plaintiffs' Fourteenth Amendment claims will be dismissed as the due process, excessive force, and illegal entry claims are more properly brought as Fourth Amendment claims; Plaintiffs have proffered no evidence in support of their equal protection claim and thus that claim will be dismissed as well.  Plaintiffs Storm Hasenauer and Robin Mitchell's Fourth Amendment excessive force claims will be dismissed because Plaintiffs are unable to identify who allegedly pushed Storm and the force used against Mrs. Mitchell was reasonable under the circumstances.  Plaintiffs' Fourth Amendment illegal entry claim survives summary judgment as does Bria Hasenauer's Fourth Amendment excessive force claim.

## I. BACKGROUND

"On October 12, 2002, Troopers [William] Luckenbill and [David] Guenther were assigned

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect this opinion of the Court.

to the Schuylkill Haven barracks and were working the midnight shift, from 11:00 p.m. to 7:00 a.m." (Defendants' Statement of Undisputed Material Fact ("DSUMF"), Dkt. 93, at ¶ 1.)  At some point after 2:00 a.m., Mr. Richard Searle arrived at the barracks and reported that he had been the victim of a hit and run accident. (Id. at ¶ 2.)  Trooper Luckenbill was assigned as the investigating officer. (Id. at ¶ 3.)  Trooper Luckenbill interviewed Mr. Searle and examined the damage to the rear of Searle's vehicle. (Id. at ¶ 3.)  Mr. Searle provided Trooper Luckenbill with a description of the truck that had hit him, and he indicated that the truck had Pennsylvania license plate YKW 4601. (Id. at ¶ 4.)  Research determined that the license plate was issued to a truck registered to Steve Mitchell. (Id. at ¶ 5.)  Trooper Luckenbill had interacted with Mr. Mitchell on at least two prior occasions. (Id. at ¶ 6.)  Mr. Searle gave a description of the man who was driving the truck that Trooper Luckenbill believed matched Mr. Mitchell. (Luckenbill Dep., Dkt. 94-5, at 11.)[2]

Troopers Luckenbill and Guenther went to the Mitchell home. (DSUMF, Dkt. 93, at ¶ 8.)  The troopers identified the truck described by Searle, with the corresponding license plate, in the Mitchell driveway. (Id. at ¶ 9.)  The troopers felt the hood of the truck, which was still warm, and observed that there was damage to the truck that was consistent with the damage to Searle's truck and consistent with Searle's description of the damage to the truck. (Id. at ¶ 10.)  Upon

---

[2] Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

inspection of the vehicle the troopers noticed that "two pieces of metal on the underside of Mr.

Mitchell's truck matched damage done to the back of Mr. Searle's car – they were both 2 feet, 9

inches apart – and a piece of plastic and paint matching Mr. Searle's car were found on Mr.

Mitchell's truck." (Id. at ¶ 11.) The troopers also noticed that the fog lights of Mr. Mitchell's truck

were hanging, damage that had been described by Mr. Searle. (Id. at ¶ 12.) The troopers

approached the side door of the house and it was Trooper Luckenbill's intention to interview Mr.

Mitchell in relation to the crash and whether he had been driving the vehicle that night.

(Luckenbill Dep., Dkt. 94-5, at 10.) It was Trooper Luckenbill's belief that investigating the hit

and run was an urgent matter that called for the questioning of Mr. Mitchell in the middle of the

night. (Id. at 10.)

      At some point after the Troopers knocked on the side door, Mrs. Mitchell answered.

"Mrs. Mitchell knew it was the police by how they were knocking and the fact that they had

flashlights." (DSUMF, Dkt. 93, at ¶ 16.) Mrs. Mitchell opened the door and the troopers, in

uniform, identified themselves as police officers. (Id. at ¶¶ 17-18.) Trooper Luckenbill asked to

speak with Mr. Mitchell and Mrs. Mitchell closed the door to see if he was available. (Id. at ¶¶

19-20.) The troopers waited outside on the porch after Mrs. Mitchell closed the door. (Id. at ¶

21.) Mr. Mitchell was asleep on the couch but Mrs. Mitchell was unable to rouse him. (Id. at ¶

22.) "Mrs. Mitchell returned to the door, opened it again and told the troopers that she was

unable to wake Mr. Mitchell up." (Id. at ¶ 23.) After telling the troopers this, Mrs. Mitchell again

4

closed the door and attempted to wake Mr. Mitchell a second time. (Id. at ¶ 24.) The troopers again waited outside on the porch and Mrs. Mitchell again returned and told the troopers that she was unable to wake Mr. Mitchell. (Id. at ¶¶ 25-26.) At this point, the parties materially disagree as to what happened next. It is Plaintiffs' position that, "[a]s Mrs. Mitchell attempted to close the door, one of the troopers pushed it open." (Id. at ¶ 53.)

During the course of these events, Mrs. Mitchell's daughter, Storm Hasenauer was present. "Storm does not know which officer pushed the door open or whether just one or both of the troopers touched the door." (Id. at ¶ 54.) When the door was opened, Storm was pushed aside and she fell to the ground. (Id. at ¶ 55.) The push was described as a "get-out-of-the-way push" by Mrs. Mitchell. (Id. at ¶ 56.) Storm does not know which trooper shoved her or if both troopers pushed her. According to Mrs. Mitchell, only one of the officers shoved Storm out of the way. (Id. at ¶¶ 57-58.) "Storm had no bruises and received no medical treatment." (Id. at ¶ 60.) Mrs. Mitchell testified that at this point she yelled at the troopers to "get out." (Robin Dep., Dkt. 94-2, at 14.)

Defendants' version of the events is significantly different. Trooper Luckenbill testified that the second time Mrs. Mitchell came to the door she

> seemed upset, concerned. She said she was unable to wake Steve up, that she had tried to wake him up and he wouldn't wake up. She walked back in the house, left the door open. We walked in right behind her and stood in the kitchen and she went back in to try and wake him up again.

(Luckenbill Dep., Dkt. 94-5, at 11.) Trooper Luckenbill admitted that he never asked if he could

5

come in the house and that it was not a clear invitation, but that he took leaving the door open as an invitation, and since it appeared to him that she seemed concerned, the troopers didn't know if there was an injury to Mr. Mitchell from the crash. (Id. at 11.) The troopers entered the house in the middle of the night and for at least part of the time that the troopers were in the house, only dim lights were on. (DSUMF, Dkt. 93, at ¶ 33.)

Plaintiffs aver that after the troopers entered the house they began beating Mr. Mitchell after he put his hands up to block the light from the flashlight from his face. (Robin Dep., Dkt. 94-2, at 14.) The troopers, however, aver that when they approached Mr. Mitchell he put his fists up and took two swings at the troopers before they began trying to place Mr. Mitchell under arrest. (Luckenbill Dep., Dkt. 94-5, at 13.)

The parties do agree that during the course of the struggle Trooper Luckenbill applied pepper spray to Mr. Mitchell's face. (Id.) Trooper Luckenbill remembers squeezing the canister once but Mr. Mitchell continued to fight and curse.[3] (Id. at 14.) After administering the pepper spray, the troopers were able to secure Mr. Mitchell with handcuffs. (Id.) Mrs. Mitchell testified that the troopers repeatedly told Mr. Mitchell that they were going to handcuff him, but he

---

[3] In describing the use of the pepper spray, Trooper Luckenbill testified: "I was attempting to gain control of Steve's arms. He refused to comply with the orders to put his hands behind his back. I took the pepper spray out of its scabbard and sprayed him in the face as best as I could." (Luckenbill Dep., Dkt. 94-5, at 18.)

repeatedly made statements along the lines of "no, you're not, get out of my house."[4]  (Robin Dep., Dkt. 94-2, at 20.)

During the course of the encounter Mrs. Mitchell attempted to get between Mr. Mitchell and the troopers while they were struggling with him.  (DSUMF, Dkt. 93, at  ¶ 34.)  At that point, Mrs. Mitchell was thrown onto a loveseat by one of the troopers.  (Id. at ¶ 35.)  "Mrs. Mitchell had a single bruise on her hip as a result of being thrown into the loveseat."  (Id. at ¶ 37.)  Although Mrs. Mitchell is uncertain as to which trooper pushed her, "Trooper Guenther acknowledges that he is the one that pushed Mrs. Mitchell back when she tried to intervene."  (Id. at ¶¶ 36 & 40.)  "Trooper Luckenbill never touched Mrs. Mitchell, but recalls Trooper Guenther motioning her to stay back or get back."  (Id. at ¶ 38.)

Mrs. Mitchell described the scene in the house as "extreme chaos."  (Id. at ¶ 32.)  "The girls were screaming and carrying on and ranting and raving and I [Mrs. Mitchell] was crying and carrying on and ranting and raving."  (Robin Dep., Dkt. 94-2, at 16.)  Additionally, Mrs. Mitchell testified that her husband was telling the troopers to keep "the F out of my house, get the F out of my house."  (Id.)

Troopers Luckenbill and Guenther arrested Mr. Mitchell.  (DSUMF, Dkt. 93, at ¶ 29.)

---

[4] Mrs. Mitchell also testified: "We all told them to leave.  Bria yelled, Storm yelled, I yelled, Mitch yelled.  At one point Bria stood and screamed and shook, and bounced her little feet up and down, and shook her hands, and said get the hell out of my house, get the hell out of my house at the top of her lungs.  And they told her to go in her room."  (Robin Dep., Dkt. 94-2, at 20.)

After he was handcuffed the troopers allegedly dragged Mr. Mitchell out of the house.  (Robin Dep., Dkt. 94-2, at 25.)   The Mitchells' other daughter, Bria, "followed the troopers as they took Mr. Mitchell out of the house after he was handcuffed, and stood at the end of the Mitchell driveway." (DSUMF, Dkt. 93, at ¶ 41.)  Prior to this point, neither trooper had any physical contact with Bria.  (Id. at ¶ 42.)  "The troopers repeatedly told Bria to go back in the house and she refused."  (Id. at ¶ 43.)  Bria was crying and yelling.  (Id. at ¶¶ 44-45.)  Additional troopers from the Hamburg barracks arrived on the scene.  (Id. at ¶ 46.)  "Trooper Luckenbill then came over to Bria, picked her up by the upper arms and slammed her into Mr. Mitchell's truck."  (Id. at ¶ 47.)  Bria looked at Trooper Luckenbill and twice told him to put her down and Trooper Luckenbill responded both times with "No."  (Id. at ¶ 48.)  "Bria then said 'I'm going to ask you one more time to put me down or you'll never have kids again because I will kick you so hard in your genitals you won't be able to squirt.'" (Id. at ¶ 49.)  Trooper Luckenbill put Bria down.  (Id. at ¶ 50.)  Bria had a bump on the back of her head and her arms were sore as a result of Trooper Luckenbill's actions.  (Id. at ¶ 51.)  Bria did not go to the hospital as a result of those injuries. (Id. at ¶ 52.)

The troopers placed Mr. Mitchell in the patrol vehicle and placed a tie rope restraint on his feet because he tried to kick Trooper Guenther when they were attempting to put him in the vehicle.  (Luckenbill Dep., Dkt. 94-5, at 14.) He was brought to a hospital where Mr. Mitchell and the troopers received care for the injuries sustained during the course of the incident.

8

On October 12, 2004, Plaintiffs filed the current action alleging violation of state and federal constitutional rights.  (Comp., Dkt. 1.)  A motion to dismiss was filed on March 25, 2005 (Dkt. 14), that this Court granted in part on July 29, 2005.  (Dkt. 25.)  Plaintiffs were granted leave to amend their Complaint, and on August 18, 2005, an amended complaint was filed. (Dkt. 27.)  Discovery closed on January 26, 2009.  On February 27, 2009, Defendants filed the pending motions for summary judgment.  (Dkt. 82; Dkt. 83.)  The issues have been fully briefed and are ripe for review.

## II.  DISCUSSION

### A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).   "Facts that could alter the outcome are material facts."  Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any

9

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988), abrogated on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).  Once the moving party satisfies its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.  Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials.  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party" bears the burden of proof at trial.  Celotex, 477 U.S. at 322.

Defendants' Motion for Summary Judgment proffers eight specific bases for summary judgment.  Defendants aver they are entitled to summary judgment on the following claims: 1) the claims against them in their official capacity; 2) the state law claims; 3) the Fourth Amendment illegal entry claim; 4) the Fourth Amendment unreasonable force claims of Mrs. Mitchell and Bria; 5) Storm's Fourth Amendment unreasonable force claim; 6) the Fourteenth Amendment unreasonable force and illegal entry claims; 7) Mr. Mitchell's Fifth, Sixth, and Eighth

10

Amendment claims; and 8) Plaintiffs' Fourteenth Amendment due process and equal protection claims.

### B.  Official Capacity Claim

In this Court's July 29, 2005 Order granting in part and denying in part Defendants' Motion to Dismiss, this Court stated that "[a]ll claims asserted in Plaintiffs' Complaint for monetary damages against Defendants William J. Luckenbill, Jr. and David Guenther, acting in their official capacities, will be DISMISSED." (Dkt. 25, at 7 (emphasis in original).)  Furthermore, Plaintiffs agree that Defendants are entitled to summary judgment on the claims against them in their official capacity.  (Robin/Steve Opp. Br., Dkt. 97, at 3; Storm/Bria Opp. Br., Dkt. 108, at 3.) Accordingly, Plaintiffs' claims against Defendants in their official capacity will be dismissed.

### C.  Fifth, Sixth, and Eighth Amendment Claims

Plaintiffs concede that summary judgment should be entered in favor of Defendants with respect to the Fifth, Sixth, and Eighth Amendment claims.  (Robin/Steve Opp. Br., Dkt. 97, at 4.) Accordingly, the Fifth, Sixth, and Eighth Amendment claims will be dismissed.

### D.  State Law Claims

Defendants aver that the dismissal of Plaintiffs' state law claims is warranted because the claims are barred by the Eleventh Amendment and state sovereign immunity.  Sovereign immunity bars claims that are asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment.  See 1 Pa.

Const. Stat. Ann. § 2310.[5]  There are nine exceptions to Pennsylvania's sovereign immunity statute.  42 Pa. Const. Stat. Ann. § 8522.  Sovereign immunity is not a valid defense in cases for damages caused by: 1) vehicle liability; 2) medical-professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines.  Id.

"Even where a plaintiff asks for monetary damages against a defendant in his individual capacities, sovereign immunity applies" Jackson v. Nassan, No. 2:08cv1054, 2009 WL 2707447, at *6 (W.D. Pa. Aug. 26, 2009). "Sovereign immunity applies to intentional and negligent torts." Dill v. Oslick, No. Civ. A. 97-6753, 1999 WL 508675, at *4 (E.D. Pa. July 19, 1999) (quoting Pierce v. Montgomery County Opportunity Bd., Inc., 884 F. Supp. 965, 972 (E.D. Pa. 1995); Shoop v. Dauphin County, 766 F. Supp. 1327, 1334 (M.D. Pa. 1991)).

> Sovereign immunity applies to claims asserted against Commonwealth officials in their individual capacities.  Unlike employees of municipal agencies who remain liable for intentional torts, employees of Commonwealth agencies are immune from liability even for intentional torts.

Dill, 1999 WL 508675, at *4 (citations omitted).  Under Pennsylvania's sovereign immunity

---

[5] "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Const. Stat. Ann. § 2310.

statute, "an employee of the Commonwealth . . . acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims." Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Cmmwlth. Ct. 1997) (citing LaFrankie v. Miklich, 618 A.2d 1145 (Pa. Cmwlth. Ct. 1992)).

Plaintiffs' state claims do not fall into one of the specific exceptions to sovereign immunity. Plaintiffs' argument that only negligent acts are covered by the Commonwealth's sovereign immunity statute is without merit. See Dill, 1999 WL 508675, at *4; Holt, 694 A.2d at 1139.

Storm and Bria argue that Defendants were not acting within the scope of their employment and, therefore, sovereign immunity does not apply. (Opp. Br., Dkt. 108, at 3-4.)

> Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

Wesley v. Hollis, Civ. A. No. 03-3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).

"[W]illful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress." Cooper v. Beard, Civ. A. No. 06-171, 2006 WL 3208783, at *16 (E.D. Pa. Nov. 2, 2006).

Plaintiffs' argument that the officers were acting outside the scope of their authority is without merit. The actions taken by Defendants were actions that were taken in their capacity as state troopers and not as private individuals. Defendants were on duty, in uniform, and investigating a crime throughout the duration of the alleged offenses. Thus, sovereign immunity applies. See id. Furthermore, Plaintiffs' Amended Complaint specifically admits that the Defendants were acting within the scope of their employment.[6] (Amend. Comp., Dkt. 27, at ¶¶ 6-9.) Because the record clearly supports the conclusion that the Defendants were acting within the scope of their employment when the acts were allegedly committed, they are immune from liability on state law causes of action, and Plaintiffs' common law claims will be dismissed.

E. Fourth Amendment Illegal Entry Claim

Defendants proffer two independent bases for summary judgment on Plaintiffs' Fourth Amendment illegal entry claim. Defendants argue that they are protected against the claim by qualified immunity, and that a merits analysis of the claim would also be resolved in their favor. Defendants assert that their entry was not illegal because exigent circumstances were present in this situation in that it could have been reasonably concluded that Mr. Mitchell "may be in need of immediate medical attention due to the fact that Mrs. Mitchell was unable to awaken him,

---

[6] Were this Court to accept Plaintiffs' argument that the Defendants were acting outside the scope of their employment, the Court would not only be ignoring the clear language of the Amended Complaint, but could be foreclosing Plaintiffs' section 1983 claim. A finding that the Defendants were acting outside the scope of their employment may foreclose a section 1983 claim as the Defendants may not then be acting under color of state law.

despite repeated attempts." (Supp. Br., Dkt. 96, at 22.)

"A warrantless home entry is presumptively unconstitutional, but 'exigent circumstances' can excuse the warrant requirement." Kubicki v. Whitemarch Twp., 270 F. App'x 127, 128 (3d Cir. 2008) (citing Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984)). "Where police officers assert exigency, they 'reasonably must believe that someone is in imminent danger.'" Id. (quoting Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996) (emphasis in original)). "'Exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." United States v. Smith, 224 F. App'x 194, 199 (3d Cir. 2007) (quoting United States v. Coles, 437 F.3d 361, 366 (3d Cir. 2006)).

Defendants proffer the following argument in support of their contention that they reasonably believed that Mr. Mitchell was in need of medical attention:

> (1) Mr. Searle reported that he was the victim of a hit and run accident in which he was rear-ended by a truck bearing a license plate registered to Mr. Mitchell; (2) there was damage to the rear of Mr. Searle's car; (3) Troopers Luckenbill and Guenther observed damage to the front of Mr. Mitchell's truck that was consistent with the damage described by Mr. Searle; (4) the damage to Mr. Searle's car and Mr. Mitchell's truck seemed to correspond; (5) the hood of Mr. Mitchell's truck was still warm; (6) Mr. Searle provided a description of the driver of the truck that Trooper Luckenbill knew to match Mr. Mitchell; and (7) Mrs. Mitchell reported that she could not wake Mr. Mitchell up, despite several attempts.

(Supp. Br., Dkt. 96, at 21-22.)

During the course of their depositions, however, neither Defendant testified that they

entered the house based on fear for Mr. Mitchell's welfare. Trooper Luckenbill mentioned that

Mrs. Mitchell "seemed upset, concerned," when she told the Troopers that she could not wake

Mr. Mitchell. (Luckenbill Dep., Dkt. 94-5, at 11.) Trooper Guenther testified that Mrs. Mitchell

left the door open when she reported that she could not wake her husband. (Guenther Dep.,

Dkt. 94-7, at 10.) Although Defendants' subjective intent is not pertinent to the determination of

whether a reasonable police officer would have believed that there was an urgent need for

immediate medical attention, see Brigham City, Utah v. Smart, 547 U.S. 398, 404 (2006), the

Troopers' understanding of the situation may be relevant to determining which of the conflicting

accounts of the event is more credible.

In this regard, Mrs. Mitchell's description of the events is dramatically different from that

of the Defendants. Mrs. Mitchell testified:

> I came back to the door. I opened the door again and I said he's out. I can't wake
> him up. He said, well, try again. I said do you have a warrant? And he said no. I
> said well then come back another time. My shift ends at, I believe he said, 7:00 a.m.
> and I'm –. I said well why don't you come back on another day other than the
> Sabbath? Sunday would be good. Anytime Friday – anytime Saturday evening after
> sunset. And he said, no, I need to speak to him now, it's an emergency. And I said I
> will try again. I shut the door. And I went back over to stir my husband. He did not
> stir. I came back and I told them he's not waking up. I'm not trying to wake him
> again. I went to close the door again. The door was almost closed, and then
> pushed the door open, and as the door went open I went back into the refrigerator.

(Robin Dep., Dkt. 94-2, at 12.)

If Mrs. Mitchell's account is believed, a jury could determine that it would not have been

objectively reasonable to conclude that a medical emergency existed. A jury must assess the

16

diverging versions of the incident presented by the parties to make the penultimate determination on the illegal entry claim.  Because the disputed facts are material to determining whether there was an objective basis for believing that Mr. Mitchell required immediate medical attention, Defendants are not entitled to summary judgment on the illegal entry claim.

In addition to their merits argument, Defendants also argue that qualified immunity precludes liability for the Fourth Amendment claims.  "Qualified immunity shields government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Manigault v. King, 339 F. App'x 229, 231 (3d Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Courts apply a two-step test to the defense of qualified immunity: "whether the Officers' acts violated a constitutional or statutory right, and if they did, whether that right was clearly established at the time of the violation."  Miezwa v. United States, 282 F. App'x 973, 978 (3d Cir. 2008).  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002).

"The right to be secure in one's own home against unreasonable searches and seizures is a clearly established right."  Perez v. Borough of Berwick, No. 4:07cv2291, 2009 WL 1139642, at *6 (M.D. Pa. Apr. 28, 2009) (citing Payton v. New York, 445 U.S. 573 (1980)).  "The time of a police search of an occupied family home may be a significant factor in

determining whether, in a Fourth Amendment sense, the search is 'unreasonable.'" United States ex rel. Boyance v. Myers, 398 F.2d 896, 897 (3d Cir. 1968).

Drawing all reasonable inferences in favor of the Plaintiffs, a reasonable officer could not infer that entering a suspect's home in the early hours of the morning, without a search or arrest warrant, and without voluntary consent, is objectively reasonable.  Accepting the facts in a light most favorable to the Plaintiffs, there were no exigent circumstances in this situation to legitimize Defendants' entry into Plaintiffs' home.  As there are genuine disputes of fact material to the question of whether Defendants' entry into the home violated the Fourth Amendment, Defendants' qualified immunity defense does not entitle them to summary judgment.

F.  Fourth and Fourteenth Amendment Excessive Force Claims

Plaintiffs' Amended Complaint asserts claims of excessive force pursuant to the Fourth and Fourteenth Amendments.  (Amend. Comp., Dkt. 27.)  "[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)); see Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998).   When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizure' of the person."  Graham, 490 U.S. at 394; Groman v. Twp. of Manalapan, 47 F.3d 628,

18

633 (3d Cir. 1995) ("An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person."). Because it is clear that the Fourth Amendment, as opposed to the Fourteenth Amendment, applies to Plaintiffs' excessive force claims, Plaintiffs' Fourteenth Amendment excessive force claims will be dismissed.

"To state a claim for excessive force under the Fourth Amendment, [a plaintiff] must show 'that a seizure occurred and that it was unreasonable.'" Phong Duong v. Telford Borough, 186 F. App'x 214, 216 (3d Cir. 2006) (quoting Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004)). "A person is 'seized' under the Fourth Amendment if he or she does not feel free to leave." Gale v. Storti, 608 F. Supp. 2d 629, 633 (E.D. Pa. 2009) (citing Shuman ex rel Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005)). "A seizure occurs whenever a police officer restrains a person's freedom and prevents him or her from walking away." Id. (citing Couden v. Duffy, 446 F.3d 483, 491 (3d Cir. 2006)). "A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). "Put another way, when a seizure is effected by even 'the slightest application of physical force,' it is immaterial whether the suspect yields to that force." Id. "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are

objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Kopec, 361 F.3d at 776 (quoting Graham, 490 U.S. at 397).

"In assessing the reasonableness of the officers' actions," courts must "account for the fact that [officers] must make 'split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary.'" Kubicki v. Whitemarsh Twp., 270 F. App'x 127, 129 (3d Cir. 2008) (quoting Couden, 446 F.3d at 493). "'Reasonableness under the Fourth Amendment should frequently remain a question for the jury,' however, 'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" Kopec, 361 F.3d at 777 (quoting Abraham, 183 F.3d at 290).

### 1. Mrs. Robin Mitchell's Claim

Defendants aver that it is clear that the force used in pushing Mrs. Mitchell aside was reasonable. Plaintiffs counter that "[t]he factual question remains, did she interfere in a lawful arrest, or was she simply assisting her husband who was being physically assaulted in an unconstitutional manner by two state troopers, in uniform, who entered her home at night without a warrant and without probably [sic] cause." (Dkt. 97, at 14.)

Defendants do not argue that Mrs. Mitchell was not seized, but instead argue that a

review of the totality of the circumstances reveals that the force used was reasonable. "The Supreme Court has noted that 'not every push or shove' violates the Fourth Amendment and that the right to use a certain degree of force must be analyzed in light of the 'facts and circumstances of each particular case . . . ." Pulice v. Enciso, 39 F. App'x 692, 696 (3d Cir. 2002) (quoting Graham, 490 U.S. at 394-95). Mrs. Mitchell testified that she "went between [the officers] to stop [the officer]" from hitting her husband and was pushed back into a loveseat. (Robin Dep., Dkt. 94-2, at 14-15.) Trooper Guenther admits to pushing Mrs. Mitchell, stating: "As I was in the process of cuffing Steve, she came off of my left shoulder, and I believe she was screaming what are you doing, what are you doing, what are you doing? And I reached back and pushed her back." (Guenther Dep., Dkt. 94-7, at 12.)

Based on the facts presented, viewed in a light most favorable to Plaintiff Robin Mitchell, Defendants are entitled to summary judgement. The force used was reasonable considering the circumstances. Mrs. Mitchell admits that she was interfering in the trooper's attempted arrest of Mr. Mitchell. (Robin Dep., Dkt. 94-2, at 14-15.) Mrs. Mitchell also acknowledges that there was "extreme chaos" during the encounter and that she and her daughters were screaming, carrying on, ranting, and raving. (Id. at 16.) Furthermore, Mr. Mitchell was screaming and resisting arrest. (Id. at 25; Steve Dep., Dkt. 94-10, at 21.) Mrs. Mitchell admits that she tried to interfere in the arrest of Mr. Mitchell in order to protect her husband and that during the course of the attempt, was pushed aside. Considering the circumstances

21

surrounding the arrest, the trooper's actions were objectively reasonable.  See Miller v. Cate, 86 F. App'x. 830, 833-34 (6th Cir. 2004); Jones v. City of Jersey City, 45 F. App'x 196, 198 (3d Cir. 2002); Benckini v. Hawk, Civ. A. No. 07-3580, 2009 WL 2951024, at *9  (E.D. Pa. Sept. 14, 2009).  Accordingly, Mrs. Mitchell's Fourth Amendment excessive force claim will be dismissed.

### 2. Bria and Storm's Claims

Defendants also contend that they are entitled to summary judgment with regard to Bria and Storm's excessive force claims.  Defendants argue that given the circumstances, the troopers' actions were objectively reasonable.  In support of the claim that Defendants are not entitled to summary judgment, Plaintiffs argue that Defendants discharged pepper spray with children in the room, slammed Bria into a truck, and "shoved" an eight-year-old aside, forcing her to fall to the floor.

Storm's claim fails as she is unable to identify who allegedly pushed her. Storm testified that when the troopers entered the house one of them pushed her aside with a "violent shove" and she fell.  (Storm Dep., Dkt. 94-9, at 10-11.)  Storm could not remember whether both of the troopers pushed her or only one.  (Id. at 10.)  Mrs. Mitchell also could not identify which trooper pushed her daughter, testifying "one of them physically touched my daughter.  I don't know which one it was."  (Robin Dep., Dkt. 94-2, at 13.)

Plaintiffs have produced no evidence that a jury could use to determine which trooper alleged pushed her and consequently, "[a]sking a jury to make this determination [as to who

pushed her] would be tantamount to asking it to perform guesswork." Taylor v. Brockenbrough, No. Civ. A. 98-6419, 2001 WL 1632146, at *2 (E.D. Pa. Dec. 20, 2001). Plaintiffs have offered the Court no case law to support a conclusion that the identity of the trooper who allegedly pusher her is "of no moment." (Opp. Br., Dkt. 108, at 13.) Mrs. Mitchell's deposition testimony establishes only that one trooper shoved her daughter. There are, however, "two [Troopers] equally as likely to have engaged in the offending conduct" and consequently, the evidence submitted by Plaintiffs is insufficient for Storm to avoid summary judgment. See Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997); Taylor, 2001 WL 1632146, at *2.

Bria, however, has presented a viable excessive force claim. Bria testified that while she was outside she was crying and screaming at the Troopers to stop hitting her father. Viewing the facts in the light most favorable to Bria, a reasonable jury could conclude that Trooper Luckenbill's use of force, slamming her up against the vehicle, was excessive under the circumstances. There is no evidence that she was interfering with Mr. Mitchell's arrest. Moreover, a jury, if it credits her account, could find the force objectively unreasonable. Consequently, Defendants' Motion for Summary Judgment as to Bria's excessive force claim will be denied.

Furthermore, both Storm and Bria allege that the use of pepper spray on Mr. Mitchell also operated as excessive force against them. Given the situation as described by Plaintiffs, there was extreme chaos during the course of the arrest. All of the family members present in

23

the home were screaming, Mr. Mitchell was resisting arrest, and Mrs. Mitchell was trying to

protect her husband from the arrest.  Pepper spray was a proportionate response to Mr.

Mitchell's actions in resisting arrest.  The pepper spray was not used against Storm or Bria, but

was instead used by the troopers in effectuating an arrest.  The Western District of

Pennsylvania has found that "pepper spray is within the lowest level of force authorized by the

Pennsylvania State Police Force Options Continuum." Revak v. Lieberum, No. 08-691, 2009

WL 3166436, at *4 (W.D. Pa. Sept. 29, 2009).  Under these circumstances, the use of pepper

spray cannot be said to represent an objectively unreasonable application of force against any

Plaintiff, including Bria and Storm.

### 3. Qualified Immunity Defense

As discussed above, courts apply a two-step test to the defense of qualified immunity:

"whether the Officers' acts violated a constitutional or statutory right, and if they did, whether

that right was clearly established at the time of the violation." See Miezwa, 282 F. App'x at

978.  Here, Plaintiffs have a constitutional right to be free from excessive force.  Bria has pled

facts that could support a jury finding that a constitutional violation occurred.  The right to be

free from excessive force is a clearly established right.  Accepting Plaintiffs' averments, Bria

was not physically interfering with the troopers' work, Bria was not armed, and there is no

evidence that she posed any physical threat to the troopers. Consequently, accepting the facts

as pled by Plaintiffs, the force allegedly used violated a clearly established constitutional right.

24

The disputed facts that are material to the summary judgment determination are also material to the qualified immunity analysis.  Accordingly, Defendants' qualified immunity defense does not warrant the entry of summary judgment.

G.  Fourteenth Amendment Claims

Defendants' final claim is that they are entitled to summary judgment with respect to Plaintiffs' Fourteenth Amendment claims.  "The Fourth Amendment, as incorporated into the Fourteenth Amendment, applies to the conduct of state officials."  Karnes v. Skrutski, 62 F.3d 485, 488 n.1 (3d Cir. 1995), abrogated on other grounds by, Curley v. Klem, 499 F.3d 199 (3d Cir. 1007).  In Albright v. Oliver, 510 U.S. 266, 272 (1994), the Court held that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  Here, Defendants aver that the Fourth Amendment controls the illegal entry and unreasonable force claims and thus the substantive due process clause would be inapplicable pursuant to Albright.

In O'Malley v. Lukowich, No. 3:08cv0680, 2008 WL 4861477, at *6 (M.D. Pa. Nov. 7, 2008), a section 1983 search and seizure case, the Honorable A. Richard Caputo held that the Fourth Amendment "provides an explicit textual source of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced."  The court found that the same principles applied to the plaintiff's Fourteenth Amendment procedural

25

due process claims, as the "claims based on principles of search and seizure are properly brought under the Fourth Amendment, not the Fourteenth Amendment." Id. at *7.

"'Claims of unreasonable search and seizure are . . . governed by the explicit constitutional text in the Fourth Amendment and may not therefore, [be] brought as claims for violation of the right to substantive due process.'" McDonald v. Darby Borough, Civ. A. No. 07-4588, 2008 WL 4461912, at *6 (E.D. Pa. Oct. 3, 2008) (citing Piskanin v. Hammer, Civ. A. No. 04-1321, 2005 WL 3071760 (E.D. Pa. Nov. 14, 2005)).  The Third Circuit has held "that Albright commands that claims governed by explicit constitutional text may not be grounded in substantive due process." Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998).

A.  *Illegal Entry and Due Process Claims*

In response to Defendants' Fourteenth Amendment summary judgment claims, Plaintiffs Bria and Storm's Brief in Opposition "adopt[s] the argument of the other Plaintiffs as set forth in their brief." (Opp. Br., Dkt. 108, at 14.)  Mr. and Mrs. Mitchell argue that in Cramer v. Deem, No. 07cv522, 2007 WL 2071882 (M.D. Pa. July 19, 2007), the court held that Albright allowed the "Fourth and Fourteenth Amendment claims to proceed simultaneously where a Section 1983 does not allege malicious prosecution." (Opp. Br., Dkt. 97, at 14-15.)  Accordingly, Mr. and Mrs. Mitchell conclude that since their claim does not involve malicious prosecution, the "Fourteenth Amendment claim survives summary judgment." (Id. at 15.)  In Cramer, however, the Court found that the issue of the appropriateness of the Fourteenth Amendment excessive

26

force claim should not be decided on a motion to dismiss.  Cramer, 2007 WL 2071882, at *3.

The Court denied the motion without prejudice to the defendant's right to reassert the argument

at a later stage of the litigation.  Id.  Here, discovery has been completed and Plaintiffs have

failed to present a claim that merits analysis under Fourteenth Amendment jurisprudence.  See

O'Malley, 2008 WL 4861477, at *6.

Accordingly, Defendants' Motions for Summary Judgment seeking to dismiss Plaintiffs'

Fourteenth Amendment due process claims will be granted.  Plaintiffs' claims are grounded in

the Fourth Amendment, and cloaking those claims in due process garb is misleading,

confusing, and redundant.  See McDonald, 2008 WL 4461912, at *6; O'Malley, 2008 WL

4861477, at *6.

### B. Equal Protection Claim

Defendants also seek dismissal of Plaintiffs' Fourteenth Amendment equal protection

claim. "To bring a successful equal protection claim under § 1983, a plaintiff must prove the

existence of purposeful discrimination, and demonstrate that he was treated differently from

individuals similarly situated." Bierley v. Grolumond, 174 F. App'x 673, 676 (3d Cir. 2006).

Plaintiffs have failed to offer any evidence that they were treated differently from individuals

similarly situated.  See id.  Accordingly, Plaintiffs' Fourteenth Amendment equal protection

claim will be dismissed.

III.  CONCLUSION

Defendants' Motions for Summary Judgment will be granted in part.   Plaintiffs' Fourth Amendment illegal entry claims and Bria's unreasonable force claims survive Defendants' Motions.  The other aspects of Defendants' Motions, however, are meritorious.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


STEVE W. MITCHELL, and ROBIN L.     :
MITCHELL, as Parents and Natural     :
Guardian of Bria Hasenauer, a/k/a Bria  :
Mitchell, a minor and Storm Hasenauer,  :
a/k/a Storm Mitchell, a minor       :
                    Plaintiffs    :
    v.                    :      3:CV-04-2240
                        :      (JUDGE VANASKIE)
WILLIAM J. LUCKENBILL, JR., DAVID    :
GUENTHER, JOHN DOE, Commissioner  :
of the Pennsylvania State Police     :
                 Defendants   :

ORDER

NOW, THIS 5th DAY OF JANUARY, 2010, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

1.  Defendants' Motions for Summary Judgment (Dkt. 82; Dkt. 83) are GRANTED IN

PART.  The Fourth Amendment illegal entry claim, Mr. Mitchell's Fourth Amendment excessive

force claim, and Bria Hasenauer's excessive force claim survive Defendants' Motion for

Summary Judgment.  Plaintiffs' remaining claims are DISMISSED.

2.  A Telephone Scheduling Conference will be held on Tuesday, February 9, 2010, at

10:00 a.m.  Plaintiffs' counsel is responsible for placing the call to (570) 207-5720, and all

parties should be ready to proceed before the undersigned is contacted.


                                        s/ Thomas I. Vanaskie
                                        Thomas I. Vanaskie
                                        United States District Judge